748 F.2d 1495
 118 L.R.R.M. (BNA) 2361, 102 Lab.Cas. P 11,287
 DRUMMOND COAL COMPANY, Plaintiff-Appellant,
v.
UNITED MINE WORKERS OF AMERICA, DISTRICT 20; United Mine
Workers of America; and Local Union No. 1553,
United Mine Workers of America,
Defendants-Appellees.
 No. 83-7616.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 17, 1984.
 
 Lange, Simpson, Robinson & Somerville, Peyton Lacy, Jr., Harry L. Hopkins, Birmingham, Ala., for plaintiff-appellant.
 William E. Mitch, Birmingham, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before HILL and HENDERSON, Circuit Judges, and WISDOM*, Senior Circuit Judge.
 WISDOM, Senior Circuit Judge:
 
 
 1
 On this appeal from a grant of summary judgment dismissing its suit to set aside an arbitral award, the plaintiff re-asserts its challenge to the award. The plaintiff, Drummond Coal Co. (Drummond), contends that the award must be vacated because it did not draw its essence from the collective bargaining agreement and because it is contrary to law and to public policy. The district court rejected both contentions and dismissed the plaintiff's claims. We affirm.
 
 I.
 
 2
 Drummond brought suit in federal district court seeking to set aside a labor arbitrator's award in a grievance filed on behalf of a laid-off employee by the defendants: United Mine Workers of America, District 20; United Mine Workers of America; and Local 1553 United Mine Workers of America (UMW). At the time the employee was notified of his layoff, he was given a panel form which, under the terms of the collective bargaining agreement, he was required to fill out and submit to mine management within five days to preserve his right to be recalled.[1] The employee did not attempt to return the form until ten days after he was notified of the layoff, at which time he gave the completed form to his immediate foreman. The foreman signed the form, witnessed the date of its return for the company, arranged for it to be witnessed on behalf of the union, and turned it over to the mine superintendent. The mine superintendent rejected the form because it was not submitted within the five day period.
 
 
 3
 The arbitrator determined that the company had waived its contractual right to refuse to accept the form, even though the form had not been timely filed. The employee's foreman had accepted the form on behalf of the company and was apparently authorized to do so. The company, therefore, was bound by his actions and could not later revoke this acceptance. Noting "the deferential standard of review that must be utilized in considering the arbitrator's decision", Drummond Coal Co. v. United Mine Workers, N.D.Ala.1983, No. CV 83-P-0386-S, the district court upheld the arbitral award.
 
 
 4
 We agree with the district court's conclusion that the arbitrator did not fail to draw the essence of his award from the collective bargaining agreement. We also concur with the court's determination that the award was not repugnant to law or to public policy.
 
 II.
 
 5
 The Supreme Court delineated the role of arbitrator and judge in the resolution of labor disputes in United Steelworkers of America v. Enterprise Wheel & Car Corporation,[2] 1960, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424:
 
 
 6
 "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (Emphasis added.)
 
 
 7
 The Court emphasized that the federal courts play a limited role in the review of arbitral decisions and cautioned that courts must not "review the merits of every construction of the contract. This plenary review would make meaningless the provisions that the arbitrators decision is final ...." Id. at 599, 80 S.Ct. at 1362.
 
 
 8
 Absent exceptional circumstances, an arbitrator's interpretation of the collective bargaining agreement is final and binding on the parties because it is this interpretation that is bargained for by the parties. Id. at 597, 80 S.Ct. at 1361.[3] Judicial review of an arbitral award is, therefore, limited to a determination of whether the arbitrator, in making the award, was functioning within his authority as a reader and interpreter of the collective bargaining agreement. The courts are not to engage in a review of the merits of the arbitrator's decision. The courts' substantive review of an arbitral award is limited to a determination of "(1) whether the award is irrational ..., (2) whether the award draws its essence from the letter or purpose of the collective bargaining agreement ..., and (3) whether the arbitrator conformed to a specific contractual limitation upon his authority ...." Loveless v. Eastern Air Lines, Inc., 11 Cir.1982, 681 F.2d 1272, 1276. This limited standard of review requires us to uphold an arbitral award that is premised on the arbitrator's construction of the contract and his understanding of the intent of the parties, even if the reviewing court disagrees with the arbitrator's construction. Loveless, id. at 1276; Enterprise Wheel & Car, 363 U.S. at 597, 80 S.Ct. at 1361.
 
 
 9
 Drummond concedes that the scope of judicial review of arbitral awards is exceedingly narrow. It contends, however, that the arbitral award in favor of the UMW must be vacated because the award fails to draw its essence from the collective bargaining agreement. More particularly, Drummond alleges that on its face the arbitrator's award specifically disregards the clear language of the collective bargaining agreement requiring that a laid-off employee submit his panel form to mine management within five days of notification of his layoff. Drummond concedes that an arbitrator may go behind the language of the contract and look to common law rules for the interpretation of private contracts and to other extrinsic evidence to construe the collective bargaining agreement in the light of the parties' intent. See Loveless, 681 F.2d at 1278-80. It contends, however, that the arbitrator in the instant case used the doctrine of waiver to circumvent the bargaining agreement, rather than to interpret the contract in the light of the true intent of the parties. Drummond therefore contends that the arbitrator was attempting to "dispense his own brand of industrial justice", thereby ignoring the prohibition of Enterprise Wheel & Car.
 
 
 10
 The arbitrator's decision not to resolve the dispute on the basis of the language in the collective bargaining agreement requiring submission of the panel form within five days does not, however, require this court to vacate the arbitral award. The arbitrator's award rested upon the application of the doctrine of waiver. Arbitrators have frequently recognized that parties may waive or otherwise be estopped from asserting rights granted under the collective bargaining agreement. See generally, F. Elkouri & E. Elkouri, How Arbitration Works 349 (3d ed. 1973). Moreover, the plaintiff in the instant case concedes that the doctrine of waiver validly can be applied in some arbitral decisions. Application of this doctrine necessarily requires the arbitrator to look beyond the contract language to the actions of the parties that would indicate an intent to waive a contractual right or requirement. Therefore, an arbitral award based on a finding of waiver is not improper simply because the arbitrator does not discuss the contractual requirement that is found to have been waived. Such an award is based upon the arbitrator's factual assessment of the actions and intentions of the parties; it rests upon a determination of the merits of the case. It is not, therefore, within the province of the courts to review this finding.
 
 
 11
 Nor may this court delve into the practical implications this award may have in future disputes. To do so would be to exceed the very narrow scope of judicial review of arbitral awards. The arbitrator in the instant case determined that the parties to this dispute had waived the contractual limitation on the period within which a laid-off employee could submit his panel form to the company. This determination is "at least rationally inferable, if not obviously drawn", from the collective bargaining agreement and the intent of the parties. Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., 5 Cir.1969, 415 F.2d 403, 412, cert. denied, 1970, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500. We cannot say, therefore, that the award is irrational, that it fails to draw its essence from the letter or purpose of the collective bargaining agreement, or that it exceeds the scope of the arbitrator's authority.
 
 III.
 
 12
 Drummond also contends that the arbitrator's order compelling the company to accept the panel form more than five days after the grievant was laid off requires the company unilaterally without notice to the union to eliminate the five-day limit from the contract. By requiring such a unilateral change of the contract, Drummond argues, the award forces the company to violate Sec. 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 158(a)(5) (1982), which requires that any change in the seniority system must be bargained for. Drummond therefore contends that the award is unenforceable as repugnant to the NLRA and as contrary to public policy.
 
 
 13
 The Supreme Court has held that "the question of public policy is ultimately one for resolution by the courts ...; a court may not enforce a collective bargaining agreement that is contrary to public policy". W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America, 1983, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298, 307 (citing Hurd v. Hodge, 1948, 334 U.S. 24, 35-36, 68 S.Ct. 847, 853, 92 L.Ed. 1187). The W.R. Grace Court warned, however, that an arbitral award will be unenforceable on this ground only when it violates some "explicit public policy" that is "well-defined and dominant ... [and is] ascertained 'by reference to the laws and legal precedents and not from general consideration of supposed public interests.' " 461 U.S. at 766, 103 S.Ct. at 2183, 76 L.Ed.2d at 307.
 
 
 14
 If in fact the arbitrator's award in the instant case was repugnant to the NLRA, the court could, and in fact would "be obliged to refrain from enforcing it". W.R. Grace, id. at 766, 103 S.Ct. at 2183, 76 L.Ed.2d at 307 (emphasis added). The district court found, however, that "in the instant factual context ... it is clear that no results of the arbitrator's decision could rise to the level of being repugnant to the NLRA". Drummond Coal Co. v. United Mine Workers, N.D.Ala.1983, No. CV 83-P-0386-S. The arbitrator found only that in this particular instance Drummond had accepted the panel form when it was submitted and could not later revoke this acceptance. The award had no impact on the terms of the collective bargaining agreement itself. Although the award may have some effect on employees who were laid off after the grievant, it does not alter seniority rights. It simply recognizes that the foreman's acceptance of the panel form was effective as of the date it was made, and that the grievant was properly included in the panel as of that date. In that respect the award was, as the district court found, similar to an award ordering reinstatement of an employee who was wrongfully discharged. The district court correctly found the plaintiff's allegation that the award was repugnant to the NLRA to be unmeritorious.
 
 IV.
 
 15
 The district court properly granted summary judgment in favor of the defendant: The arbitrator did not fail to draw the essence of his award from the collective bargaining agreement. The award was based upon a factual finding of waiver of a contractual provision and not upon an attempt to circumvent the requirements of the collective bargaining agreement. Nor is the award contrary to law or to public policy; rather, it gives effect to the actions and intentions of the parties. Accordingly, the order of the district court is AFFIRMED.
 
 
 16
 JAMES C. HILL, Circuit Judge, concurring dubitante:
 
 
 17
 The end product of this litigation may well be that, at the union's urging, management has been found to have the power to discriminate between laid off workers vis-a-vis rehire. Those whose panel forms are accepted by the company after the five day period will be entitled to recall; those whose forms are rejected will not. Perhaps at this next bargaining session the union will be able to undo what, at its urging, we have done.
 
 
 
 *
 Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The agreement provided: "Within five (5) days after an employee is notified that he is to be laid off, he must fill out a standardized form and submit it to mine management". National Bituminous Coal Wage Agreement of 1981, Art. XVII, Sec. (c). Employees who had been laid off were then placed on a panel from which they were returned to employment, as it became available, on the basis of seniority. Id. at Sec. (d)
 
 
 [2]
 Enterprise Wheel is one of the three Supreme Court decisions comprising the Steelworkers Trilogy, in which the Court "set forth the basic framework for deciding questions concerning the relationship of federal courts to arbitration proceedings". Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local Union 657 v. Stanley Structures, Inc., 5 Cir.1984, 735 F.2d 903, 905. The other cases making up the trilogy, which deal more specifically with the question of when arbitration is the proper method of resolving disputes, include United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 and United Steelworkers of America v. Warrier & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409
 
 
 [3]
 Several commentators have expounded this rationale. See, e.g., Kaden, Judges and Arbitrators: Observations on the Scope of Judicial Review, 80 Colum.L.Rev. 267 (1980) ("[T]he parties have an institutional stake in finality because the arbitrator is their creation; he functions by their consent and at their sufferance, and his powers and roles can and should be molded by them to suit their own purposes."); St. Antoine, Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny, 75 Mich.L.Rev. 1137, 1140 (1977) ("[T]he arbitrator is the parties' officially designated 'reader' of the contract .... In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award is their contract.... [T]he arbitrator's award should be treated as though it were a written stipulation by the parties setting forth their own definitive construction of the labor contract.") (emphasis in original)